# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ANDREI KOREN, ANNA HIRSIVARA, and DARIA KOREN, <br>    Plaintiffs, <br><br> v. <br><br> MICHAEL CHERTOFF, SECRETARY, UNITED STATES DEPARTMENT OF HOMELAND SECURITY; ALBERTO GONZALES, ATTORNEY GENERAL; EMILIO GONZALEZ, DIRECTOR, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; PAUL NOVAK, SERVICE CENTER DIRECTOR, USCIS VERMONT SERVICE CENTER; and ROBERT MUELLER, DIRECTOR, FEDERAL BUREAU OF INVESTIGATION, <br>    Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | Case No: 3:07cv157 (PCD) |

## **RULING ON MOTION TO DISMISS**

  Plaintiffs Andrei Koren, Anna Hirsivara and Daria Koren bring this action seeking mandamus and injunctive relief for the alleged failure of the Department of Homeland Security ("DHS") and the United States Citizenship and Immigration Services ("CIS") to adjudicate Plaintiffs' pending Applications to Adjust to Permanent Resident Status, Forms I-485 ("adjustment applications"), filed at the CIS Vermont Service Center ("VSC") on May 16, 2005. (Compl. ¶ 1.) Defendants move, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiffs' Complaint. For the reasons that follow, Defendants' Motion to Dismiss [Doc. No. 13] is **denied**.

## I. BACKGROUND[1]

Plaintiffs are natives and citizens of Belarus. (Compl. ¶¶ 4-6). Plaintiff Andrei Koren is a radiochemistry researcher who has been employed by Molecular NeuroImaging, LLC ("MNI") since July 2004, where he conducts radiochemical research with short-lived radioisotopes, the use of which is relevant only for clinical purposes and aids in developing new methods of treatment for Alzheimer's, Parkinson's and other diseases. (Id. ¶¶ 12, 24.) MNI is a clinical research and development organization that specializes in the use of scintigraphic biomarkers for the diagnosis and treatment of neurodegenerative and neuropsychiatric disorders. (Id. ¶ 24.) Mr. Koren lives in Bethany, Connecticut with his wife, Plaintiff Anna Hirsivara, and his daughter, Plaintiff Daria Koren. (Id. ¶¶ 4-6.)

Plaintiff Andrei Koren's Immigrant Petition for Alien Worker, Form I-140, was approved by the INS on February 9, 2005. (Id. ¶ 12.) The petition classified him as an Alien of Extraordinary Ability pursuant to INA § 203(b)(1)(A), codified at 8 U.S.C. § 1153(b)(1)(A). (Id. ¶ 12.) Based on the approval of Mr. Koren's I-140 petition, Plaintiffs filed their adjustment applications on May 16, 2005. (Id. ¶ 14.) Plaintiffs were given appointments for fingerprinting and biometrics, for which they duly appeared on July 9, 2005. (Id.) Plaintiffs have not yet been scheduled for an adjustment of status interview. (Id. ¶ 15.)

Plaintiffs have made a number of inquiries into the status of their applications. Plaintiffs' first inquiry was made on June 21, 2006 via CIS's National Customer Service Center ("NCSC") hotline. (Id. ¶ 19.) Plaintiff Andrei Koren received a written response by letter dated July 5,

---

[1] Plaintiffs' factual allegations, as set forth in their Complaint, are taken as true for purposes of this motion.

2006, stating that his "case is not yet ready for decision, as the required investigation into your background remains open." (Id.) On October 13, 2006, Plaintiff made a second inquiry via the NCSC hotline and received a similar letter, dated December 7, 2006, stating that his "case is not yet ready for decision, as the required security checks remain pending." (Id. ¶ 20.)

On November 11, 2006, Mr. Koren wrote to Congresswoman Rosa DeLauro, asking her to make an inquiry into the status of his I-485 application. (Id. ¶ 21.) By letter dated December 4, 2006, Representative DeLauro confirmed that the adjudication of Plaintiff's application was delayed due to "security background checks." (Id.) On November 15, 2006, Mr. Koren made a direct request of the Federal Bureau of Investigation ("FBI") pursuant to the Freedom of Information Act ("FOIA"), requesting "all records indexed to [his] name or [his] identifying information, maintained in the Central Records System (CRS)." (See Ex. H to Compl.) By letter dated December 12, 2006, the FBI responded that a search located no records responsive to Plaintiff's request. (Compl. ¶ 22.)

Plaintiffs again inquired into the status of their adjustment applications during an Infopass appointment at CIS's Hartford Field Office on December 1, 2006. (Id. ¶ 23.) Plaintiffs were informed during this appointment that their applications were "still pending." (Id.)

Plaintiffs filed the instant action on February 1, 2007, and Defendants moved to dismiss on April 27, 2007.

## II.   STANDARD OF REVIEW

### A.   Rule 12(b)(1)

A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it. See Fed. R.

3

Civ. P. 12(b)(1); accord Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005). Plaintiff, as the party asserting subject matter jurisdiction, has the burden of establishing by a preponderance of the evidence that it exists, Aurecchione, 426 F.3d at 638, and the court should not draw argumentative inferences in his favor. Atlantic Mutual Ins. Co. v. Balfour MacLaine Int'l, 968 F.2d 196, 198 (2d Cir. 1992). Unlike with a Rule 12(b)(6) motion, a court resolving a Rule 12(b)(1) motion for lack of subject matter jurisdiction may refer to evidence outside the pleadings. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Kamen v. American Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)); see also Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000) (in resolving a Rule 12(b)(1) motion, district courts may "resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing"). A court must "look to the substance of the allegations to determine jurisdiction." Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1019 (2d Cir. 1993).

**B.    Rule 12(b)(6)**

The function of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 776 (2d Cir. 1984) (citation omitted). Therefore, when considering such a motion, the court must accept the facts alleged in the complaint as true. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); see also Kirch v. Liberty Media Corp., 449 F.3d 388, 392 (2d Cir. 2006) (courts considering a motion to dismiss pursuant to Rule 12(b)(6) should accept as true the factual allegations in the complaint and draw

4

all inferences in the plaintiffs' favor); but see Smith v. Local 819 I.B.T. Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (citation and internal quotation marks omitted). Dismissal of a complaint under Rule 12(b)(6) is inappropriate unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." I. Meyer Pincus & Associates v. Oppenheimer & Co., 936 F.2d 759, 762 (2d Cir.1991); see also Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (Courts should not grant a Rule 12(b)(6) motion to dismiss merely because recovery seems unlikely or remote, as "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.").

Where, as here, a party moves to dismiss pursuant to Rule 12(b)(1) in addition to other bases, "the court should consider the Rule (12)(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n., 896 F.2d 674, 678 (2d Cir. 1990).

## III. DISCUSSION

### A. 8 U.S.C. § 1252(a)(2)(B)(ii)

Defendants first argue that 8 U.S.C. § 1252(a)(2)(B)(ii) divests this Court of jurisdiction over Plaintiffs' claims. (Defs.' Mem. Supp. Mot. Dismiss 8.) In 1996, Congress added 8 U.S.C. § 1252(a)(2)(B)(ii) to the immigration code as part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). See IIRIRA, Pub. L. No. 104-208 Division C, § 306(a), 110 Stat. 3009-546, 3009-607 (1996). This section strips the federal courts of

jurisdiction to review certain INS decisions:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this title [8 USCS §§ 1151 et seq.] to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 208(a) [8 USCS § 1158(a)] [relating to asylum].

8 U.S.C. § 1252(a)(2)(B)(ii). The phrase "under this title" in § 1252(a)(2)(B)(ii) refers to Subchapter II of Chapter 12 of Title 8 of the United States Code, which includes §§ 1151-1381. Sanusi v. Gonzales, 445 F.3d 193, 198 (2d Cir. 2006). Therefore, § 1252(a)(2)(B)(ii) refers to decisions made under, *inter alia*, 8 U.S.C. § 1255(a), the provision at issue here.

Although the Second Circuit has not spoken on this exact issue, opinions issued by the Second Circuit and other courts of appeals offer some guidance with regard to the reach of § 1252(a)(2)(B)(ii). Recognizing "the 'strong presumption in favor of judicial review of administrative action,'" Sepulveda v. Gonzales, 407 F.3d 59, 62 (2d Cir. 2005) (quoting INS v. St. Cyr, 533 U.S. 289, 298, 150 L. Ed. 2d 347, 121 S. Ct. 2271 (2001)), the Second Circuit has held that "§ 1252(a)(2)(B) does not bar judicial review of nondiscretionary, or purely legal, decisions . . . ." Id. at 63. In Spencer Enterprises, Inc. v. United States, 345 F.3d 683 (9th Cir. 2003), the court examined the language of the provision in question and found that Congress intended to withdraw jurisdiction only over those decisions which the statutory language explicitly specifies as wholly discretionary. Id. at 689-90. Therefore, the court held that on a request to review an apparently discretionary decision, the court must determine whether any statute specifies the particular authority at issue, and then whether that authority is wholly

6

discretionary. Id.[2]; see also Alaka v. Att'y Gen., 456 F.3d 88, 95 (3d Cir. 2006) ("The jurisdiction-stripping language of § 1252(a)(2)(B)(ii) applies not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion."); Khan v. United States Att'y Gen., 448 F.3d 226, 232 (3d Cir. 2006) (noting that "'to specify' means '[t]o state explicitly or in detail,'" and following the Second Circuit in finding that § 1252(a)(2)(B)(ii) does not deprive the Courts of Appeals of jurisdiction to review a claim that an IJ wrongly denied a motion for a continuance in an immigration proceeding); Sanusi v. Gonzales, 445 F.3d at 198-99 (citing St. Cyr and reiterating the "strong presumption in favor of judicial review of administrative action" in holding that § 1252(a)(2)(B)(ii) "does not deprive [the Court of Appeals] of jurisdiction to review decisions by IJs to grant or to deny continuances"); Huang v. Gonzales, No. C07-0096RSM, 2007 U.S. Dist. LEXIS 32276, at *7 (W.D. Wash. May 2, 2007).

Under section 245 of the Immigration and Nationality Act ("INA"), "[t]he status of an alien . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence . . . ." 8 U.S.C. § 1255(a). Defendants are correct that the decision of whether to grant or deny an adjustment

---

[2] The Spencer court also noted the "split in authority as to the applicability of § 1252(a)(2)(B)(ii) outside the context of removal proceedings," and cited several district court cases from this circuit which have determined that Congress only intended § 1252(a)(2)(B)(ii) to apply to decisions made in the context of removal proceedings. Spencer Enters., 345 F.3d at 692 (citing, *inter alia*, Talwar v. INS, No. 00 Civ. 1166 (JSM), 2001 U.S. Dist. LEXIS 9248, at *12 (S.D.N.Y. July 9, 2001); Burger v. McElroy, No. 97 Civ. 8775 (RPP), 1999 U.S. Dist. LEXIS 4854, at *4 (S.D.N.Y. Apr. 12, 1999)). Because the Spencer court found that the decision at issue in that case was not discretionary, however, it was not necessary to decide whether § 1252(a)(2)(B)(ii) applies outside the context of removal proceedings. See id. at 692.

7

application is wholly discretionary, however, the decision of whether to actually *adjudicate* an adjustment application, as Plaintiffs are requesting in this case, is not discretionary.[3] See Kim v. Ashcroft, 340 F. Supp. 2d 384, 389 (S.D.N.Y. 2004); see also Bartolini v. Ashcroft, 226 F. Supp. 2d 350, 353 (D. Conn. 2002) ("the INS does not have discretion as to whether to adjudicate an adjustment of status application"); Song v. Klapakas, No. 06-05589, 2007 U.S. Dist. LEXIS 27203, at *12 (E.D. Penn. Apr. 12, 2007) (finding that defendants' failure to adjudicate an application for adjustment of status was not a discretionary decision); Loo v. Ridge, No. 04cv5553 (DLI) (RML), 2007 U.S. Dist. LEXIS 17822, at *9 (E.D.N.Y. Mar. 14, 2007) (noting that adjudicating an adjustment of status application is not at the discretion of defendants because defendants are required to do so); Yu v. Brown, 36 F. Supp.2d 922, 931-32 (D.N.M. 1999) (holding that the INS owes plaintiff a duty to process her application for a change of status to permanent resident). Moreover, there is nothing in the statute to suggest that the speed of adjudication is discretionary. See Huang, 2007 U.S. Dist. LEXIS 32276 at *8 ("nothing in the INA addresses, much less specifies, any discretion associated with the pace of adjudication"); Duan v. Zamberry, No. 06-1351, 2007 U.S. Dist. LEXIS 12697, at *7 (W.D. Penn. Feb. 23, 2007) ("Although the speed of processing may be 'discretionary' in the sense that it is determined by choice, and that it rests on various decisions that Defendants may be entitled to make, it is not discretionary in the manner required by the jurisdiction-stripping language of the

---

[3] The title of § 1252(a)(2)(B), i.e., "Denials of Discretionary Relief," supports this conclusion, as it "suggests that the section's primary purpose is to preclude courts from entertaining appeals from disappointed aliens who have had their applications denied." Elmalky v. Upchurch, No. 3:06-CV-2359-B, 2007 WL 944330 (N.D. Tex. Mar. 28, 2007); see also Spencer Enters., 345 F.3d at 690 ("Our interpretation is also bolstered by the fact that the heading of paragraph § 1252(a)(2)(B) is entitled "Denials of discretionary relief," indicating that it applies primarily to forms of relief that are within the Attorney General's sole discretion to grant.").

IIRIRA.").

Defendants cite Safadi v. Howard, 466 F. Supp. 2d 696 (E.D. Va. 2006), for the proposition that the word "action" in § 1252(a)(2)(B)(ii) encompasses the entire process of reviewing an adjustment application, including the pace at which CIS processes these applications. (Defs.' Mem. Supp. Mot. Dismiss 11 (citing Safadi, 466 F. Supp. 2d at 698-99).) The Safadi court concluded, based on that determination, that Congress had vested the Secretary of Homeland Security with complete discretion over the process of adjudicating 1-485 applications, including the process of reviewing the applications and the pace at which that process proceeds. 466 F. Supp. 2d at 699. The court made clear, however, that its decision did not address "the question whether jurisdiction would exist in a district court to review plaintiff's case where USCIS refused altogether to process an adjustment application or where the delay was so unreasonable as to be tantamount to a refusal to process the application." Id. at 700. The courts in Huang, 2007 U.S. Dist. LEXIS 32276 at *10, and Duan, 2007 U.S. Dist. LEXIS 12697, at *9, raised the question of whether, based on this disclaimer, a reasonable delay might qualify as "action," whereas an unreasonable delay would not. In any event, this Court is not persuaded by the Safadi court's reasoning. Section 1255(a) does not commit the entire "process" or "pace" of adjusting an applicant's status to the Attorney General, but says only that he may make an adjustment "in his discretion." This Court's reading of the statute, i.e., that the pace of adjudicating adjustment applications is not specifically committed to the Attorney General's discretion in § 1255(a), accords with the Second Circuit's general presumption in favor of judicial review. See Sanusi, 445 F.3d at 199; Sepulveda, 407 F.3d at 62.

Accordingly, this Court finds that § 1252(a)(2)(B)(ii) does not divest this Court of subject

9

matter jurisdiction over Plaintiffs' claim that the adjudication of their applications for adjustment of status has been unreasonably delayed. Accord Huang, 2007 U.S. Dist. LEXIS 32276 at *10.

### B. Subject Matter Jurisdiction

Plaintiff alleges that this Court has subject matter jurisdiction pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., the federal question statute, 28 U.S.C. § 1331, and the Mandamus and Venue Act, 28 U.S.C. § 1361. (Compl. ¶¶ 2, 31.) The APA does not provide the Court with an independent basis for subject matter jurisdiction, see Califano v. Sanders, 430 U.S. 99, 106-07, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977), however, Section 6 of the APA in conjunction with the federal question statute, 28 U.S.C. § 1331, does provide a basis for subject matter jurisdiction.

The federal question statute confers jurisdiction on the district courts over "all civil actions arising under" federal law. 28 U.S.C. § 1331. This has been interpreted to mean that federal question jurisdiction exists where a claim: (1) turns on the interpretation of the laws or Constitution of the United States and (2) is not patently without merit. Bartolini, 226 F. Supp. 2d at 354 (citing Bell v. Hood, 327 U.S. 678, 684, 66 S. Ct. 773, 776, 90 L. Ed. 939 (1946)). Plaintiffs' claim turns on the interpretation of section 6 of the APA, which provides, in pertinent part, that "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b) (emphasis added).[4] Moreover, the APA provides for district

---

[4] This provision is referred to as either "section 6 of the APA" or "§ 555(b)." Although Plaintiffs' Complaint broadly refers to the APA, 5 U.S.C. § 701 et seq., as the basis for jurisdiction, Plaintiffs specifically invoke section 6 of the APA in their opposition papers. Accordingly, the Court will assume that the jurisdictional arguments are predicated on that provision.

courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

Defendants first argue that the APA itself precludes this Court from reviewing Plaintiffs' APA claim. The APA does not entitle a person "adversely affected or aggrieved by agency action" to judicial review where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2)[5]; Brock v. Pierce County, 476 U.S. 253, 260 n.7, 106 S. Ct. 1834, 90 L. Ed. 2d 248 (1986). "Agency action" is defined under the APA to include the "failure to act." 5 U.S.C. § 551(13). Defendants argue that § 701(a)(2) precludes judicial review over Plaintiffs' claims because the adjudication of I-485 applications is committed to agency discretion by law. (Defs.' Mem. Supp. Mot. Dismiss 15.) This argument fails.

As set forth above, the decision of whether to *grant or deny* an adjustment application is wholly discretionary. See 8 U.S.C. § 1255(a). The question whether to *adjudicate* an adjustment application, however, is not discretionary, but is governed by section 6 of the APA, which requires CIS to take action on applications presented to it "within a reasonable time." 5 U.S.C. § 555(b); Kim, 340 F. Supp. 2d at 389; Bartolini, 226 F. Supp. 2d at 353-54 n.3. The "other" cases cited by Defendants for the proposition that claims relating to alleged delays in the process of adjudicating an adjustment of status application are unreviewable under the APA are distinguishable and unpersuasive. First, one of the cases, Karan v. McElroy, No. 02 Civ. 6678 (JGK), 2003 U.S. Dist. LEXIS 9487, 2003 WL 21209769 (S.D.N.Y. May 23, 2003), involved a plaintiff seeking a favorable decision, rather than just an adjudication, by INS/CIS. See 2003 WL

---

[5] Section 701 also provides that a person is not entitled to judicial review where "statutes preclude judicial review." 5 U.S.C. § 701(a)(1). Defendants argue that 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review, however, that argument was rejected above.

11

21209769 at *1-2 (dismissing plaintiff's complaint seeking to compel an adjustment in immigration status to lawful permanent resident for lack of subject matter jurisdiction, but identifying a number of reasons for which the INS's delay was legitimate, even if the court had jurisdiction). Second, two of the cases involved the scheduling of discretionary interviews regarding the plaintiffs' adjustment applications, and thus are factually distinguishable. See Zheng v. Reno, 166 F. Supp. 2d 875, 878-81 (S.D.N.Y. 2001) (found no jurisdiction where the plaintiff was seeking mandamus and declaratory judgment relief to require the INS to schedule a discretionary interview regarding an adjustment of immigration status application); Rahman v. McElroy, 884 F. Supp. 782 (S.D.N.Y. 1995) (involving motion for injunctive relief claiming that the INS acted arbitrarily in its scheduling of interviews in connection with adjustment applications). Finally, in Safadi, 466 F. Supp. 2d at 700, the Court found that § 1252(a)(2)(B)(ii) deprived the Court of jurisdiction, but noted that it was not addressing "the question whether jurisdiction would exist in a district court to review plaintiff's case where USCIS refused altogether to process an adjustment application or where the delay was so unreasonable as to be tantamount to a refusal to process the application."

Defendants also cite Heckler v. Chaney, 470 U.S. 821, 84 L. Ed. 2d 714, 105 S. Ct. 1649 (1985), in which the Supreme Court interpreted 5 U.S.C. § 701(a)(2) to mean that "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." Id. at 830. Although Congress did not set forth a time table or deadline for adjudication in § 1255(a), it is clear that CIS has a duty to adjudicate the adjustment applications within a reasonable period of time. As the Kim court explained:

> although there is no statutory or regulatory deadline by which the CIS must

> adjudicate an application, at some point, defendants' failure to take any action runs afoul of section 555(b). Were it otherwise, the CIS could hold adjustment applications in abeyance for decades without providing any reasoned basis for doing so. Such an outcome defies logic—the CIS simply does not possess unfettered discretion to relegate aliens to a state of "limbo," leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA.

340 F. Supp. 2d at 393. When faced with similar cases, district courts within the Second Circuit have routinely found that alleging a violation of section 6 of the APA brings the action within federal question jurisdiction so long as the claim is not "patently without merit." See, e.g., Loo v. Ridge, No. 04cv5553 (DLI) (RML), 2007 U.S. Dist. LEXIS 17822 (E.D.N.Y. Mar. 14, 2007); Am. Acad. of Religion v. Chertoff, 463 F. Supp. 2d 400 (S.D.N.Y. 2006); Salehian v. Novak, No. 3:06cv459 (PCD), 2006 U.S. Dist. LEXIS 77028 (D. Conn. Oct. 23, 2006); Saleh v. Ridge, 367 F. Supp. 2d 508 (S.D.N.Y. 2005); Kim, 340 F. Supp. 2d at 390-91; Przhebelskaya v. United States Bureau of Citizenship & Immigration Servs., 338 F. Supp. 2d 399 (E.D.N.Y. 2004); Bartolini v. Ashcroft, 226 F. Supp. 2d 350 (D. Conn. 2002); Cordoba v. McElroy, 78 F. Supp. 2d 240 (S.D.N.Y. 2000).

This Court finds that the decision whether the adjudicate Plaintiffs' application is not discretionary and review of CIS' failure to adjudicate Plaintiffs' applications is not foreclosed by § 701(a)(2). As Plaintiffs have met the first requirement for federal question jurisdiction, the Court turns to the question of whether Plaintiffs' claim is "patently without merit." To determine whether a claim is "patently without merit," the Court must determine "whether the right claimed is so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." New York Dist. Att'y Investigators Police Benevolent Ass'n, Inc. v. Richards, 711 F.2d 8, 10 (2d Cir. 1983)

(alteration in original). "In deciding the issue of jurisdiction it is not necessary to determine whether the cause of action is one on which the plaintiff could actually recover." Id. This Court has previously held that the right to have an application for adjustment of status adjudicated within a reasonable time "cannot be said to be patently without merit," Salehian, 2006 U.S. Dist. LEXIS 77028 at *8; Bartolini, 226 F. Supp. at 354, and the Court can find no reason for a different result in this case. Accordingly, this Court has subject matter jurisdiction over Plaintiffs' claim pursuant to 28 U.S.C. § 1331 in conjunction with 5 U.S.C. § 555(b).

"Where the agency in charge of the adjudication fails to render a decision within a reasonable period of time, as required by § 555(b), the Court has the power to grant a writ of mandamus compelling an adjudication." Am. Acad. of Religion v. Chertoff, 463 F. Supp. 2d 400, 420 (S.D.N.Y. 2006); accord Salehian, 2006 U.S. Dist. LEXIS 77028 at *10. Defendants challenge the use of mandamus in this case, arguing that Plaintiffs have no clear right to mandamus and Defendants have no clear duty to provide it.

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Defendants are correct that the decision whether to grant or deny Plaintiffs' adjustment applications is discretionary and lies beyond the scope of mandamus. But, as another district court found in a similar context, "the wide latitude given the Executive to grant or deny an [adjustment] application . . . does not include the authority to refuse to adjudicate [an] application." Am. Acad.

of Religion, 463 F. Supp. 2d at 421.[6] Since CIS' obligation to *adjudicate* adjustment of status applications is clearly prescribed, the failure to do so within a "reasonable" period of time triggers mandamus jurisdiction in federal court. See id. (citing Patel v. Reno, 134 F.3d 929, 932 (9th Cir. 1998) ("When the suit challenges the authority of the consul [or other Government agent] to take or fail to take an action as opposed to a decision taken within the [agent's] discretion, jurisdiction exists."); Kim, 340 F. Supp. 2d at 389-91, 393).

### C. Failure to State a Claim

Having determined that jurisdiction exists, the Court now considers whether, under any set of facts that could be proved consistent with Plaintiffs' allegations, Defendants' delay in adjudicating Mr. Koren's adjustment application is "unreasonable" under the APA. In determining whether a delay is "reasonable" under section 6 of the APA, courts "look to the source of delay—e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." Reddy v. Commodity Futures Trading Comm'n, 191 F.3d 109, 120 (2d Cir. 1999). Plaintiffs, citing the average processing times for I-485 applications as stated on the CIS website, contend that their applications have been pending for twice the normal waiting period. (See Pls.' Mem. Opp. Mot. Dismiss 10; Compl. ¶ 17.) Defendants contend generally that "processing times fluctuate widely," and argue that "there is simply nothing in the record to suggest that the processing time for plaintiffs has been unreasonable." (Defs.' Mem. Supp. Mot. Dismiss 17-18.) Defendants also note the "need for careful investigation" and discuss the post-9/11 national security demands on the FBI and CIS.

---

[6] While the American Academy of Religion case dealt with the adjudication of nonimmigrant visa applications, the court's logic applies with equal force to the adjudication of adjustment of status applications.

(See id. at 18-19.) This Court is aware of the significant demands on the CIS and the legitimate national security interests at stake. Although the delay in this case may be reasonable, Defendants have offered no explanation for the delay with regard to Plaintiffs' applications. Because there is insufficient information on which to base a determination at this time, the Court cannot say that Plaintiffs will be unable to prove any set of facts which would entitle them to relief. See Kim, 340 F. Supp. 2d at 393-94 ("Neither party has offered an explanation for the delay and as such, it cannot be said that [the plaintiff] will be unable to prove any set of facts, consistent with his allegations, entitling him to relief."); Am. Acad. of Religion, 463 F. Supp. 2d at 422 (the court found the delay unreasonable and ordered the government to adjudicate the plaintiff's pending visa application within ninety days). Accordingly, Defendants' motion to dismiss is denied.

**IV. CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 13] is **denied**. Defendants shall file a motion for summary judgment on or before June 6, 2007. Plaintiffs shall file their opposition and cross-motion on or before June 27, 2007. Defendants shall file a reply to Plaintiffs' opposition and cross-motion on or before July 12, 2007.

SO ORDERED.

Dated at New Haven, Connecticut, May  14 , 2007.

/s/
Peter C. Dorsey, U.S. District Judge
United States District Court